J-A24011-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| ERIC LAMAR THOMAS | |
| Appellant | No. 1176 WDA 2016 |

Appeal from the Judgment of Sentence July 14, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0001963-2016

BEFORE:  MOULTON, J., SOLANO, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:          **FILED NOVEMBER 14, 2017**

Eric Lamar Thomas appeals from the July 14, 2016 judgment of sentence entered in the Allegheny County Court of Common Pleas following his convictions for firearms not to be carried without a license, persons not to possess a firearm, and possession of marijuana.[1]  We affirm.

The factual history of this matter, as detailed in the Affidavit of Probable Cause and as stipulated to by the parties at trial, is as follows:

> On 2/7/16 at 1400 hours, Officers were dispatched to Liberty Avenue at Stanwix Street for a welfare check for two men who appeared to be passed out in a purple car with the engine revving, unknown life status.  S[ergent]

_____

[1] 18 Pa.C.S. §§ 6106(a)(1), 6105(a)(31), and 35 P.S. § 780-113(a)(31), respectively.

Digiacomo[2] (3280) was the first to arrive on scene as he called out at that location along with firemen and medics. Sgt. Digiacomo updated the call when he called out on the radio that the vehicle was located. Just after locating the vehicle, Sgt. Digiacomo called out for units to step it up to that location.

As I, Officer M[andy] Koo, arrived along with Officer A. Koo,[3] we found Sgt. Digiacomo on the passenger side of a purple colored Dodge Intrepid with his firearm drawn on the passenger of the vehicle and he repeatedly ordered the male not to move. Sgt. Digiacomo asked for one of us to come to the passenger side and he ordered me, Officer M[andy] Koo, to recover a firearm whose hand grip was visibly seen sticking out of the right pocket of the hooded sweatshirt worn by the black male passenger. I reached for the hand grip of the gun and recovered it from the passenger's pocket. The firearm was a black and green Walther .40 caliber pistol.

At this time Sgt. Digiacomo removed the black male passenger from the vehicle and handcuffed him. Officer Koo remained at the driver side of the vehicle until we had the passenger in handcuffs. Also in plain view was a clear knotted baggie containing marijuana which I recovered from the door sill guard (plastic kick plate) just to the right of where the passenger was sitting. The driver of the vehicle, later identified as Eugene Satterwhite, was then ordered from the car and was compliant when handcuffed and detained.

The black male passenger of the vehicle was uncooperative and argumentative and would not offer any identifying information about himself. Officer Mammerelli, Officer Winters, Officer Remmy, and Officer Osz[4] all responded to the scene as back up. I handed the firearm that was recovered from the passenger to Officer

---

[2] Sergeant Digiacomo's first name does not appear in the certified record.

[3] Officer A. Koo's first name does not appear in the certified record.

[4] The officers' first names do not appear in the certified record.

Mammerelli and asked him to clear the weapon to make it safe. Officer Mammerelli removed a magazine from the firearm containing twelve .40 caliber rounds and there was no round found in the chamber of the firearm. Officer Mammerelli ran the firearm information (Walther P99 .40 caliber pistol serial #FAE0197) through index and it came back as No Record Found. Officer Mammerelli asked the black male passenger if he had a permit to carry a firearm and the male said no. Officer Mammerelli was also given the marijuana found in the vehicle and he took it, along with the gun to Zone 2 Station and secured it in the evidence locker. Officer Mammerelli also recovered two cell phones and a digital scale from the front passenger seat of the vehicle which was brought to Zone 2 Station and logged into 30 day hold.

Once the scene was safe Sgt. Digiacomo was able to explain what occurred prior to my arrival. Sgt. Digiacomo said that he was flagged down by a tow truck driver who pointed toward the incident vehicle (purple Dodge Intrepid) and upon his approach he observed a black male driver and a black male passenger who were non-responsive. Sgt. Digiacomo said that the driver woke up, however, the passenger of the vehicle still remained non-responsive. There were firemen on scene and they were going to reach into the window to apply a sternum rub to the passenger at which time Sgt. Digiacomo said that he was going to open the door so they could better reach the passenger. When Sgt. Digiacomo opened the door he readily observed the firearm hand grip sticking out of the right pocket of the passenger's hoodie and the marijuana was seen in plain view on the door sill guard just next to the passenger. Medic District Chief Gilchrist, A., along with Medics Berg, D. and Guchert, G. (medic unit 14)[5] were on scene to witness the removal of the passenger from the vehicle.

---

[5] The medics' first names do not appear in the certified record.

The black male passenger, John Doe,[6] immediately started making accusations that he was injured by the Police even though the medics were on scene to witness our encounter with him. Medic Berg spoke with Doe and he was cleared on scene since he had no injuries and Berg knew that the accusations made by Doe were false as he was there to witness the encounter.

Sgt. Digiacomo escorted Doe to my patrol car (unit 3224) and Doe was recorded as he was placed in the vehicle and seatbelted in. Doe continued to be be[l]ligerent and uncooperative and would not give any identifying information on himself. I transported Doe to the ACJ where the guards were alerted to Doe's be[l]ligerent behavior Upon my arrival at the ACJ followed by Officer Remmy and Osz as backup, Doe attempted to kick the back window out of the patrol vehicle. Corrections Officers witnessed his behavior and the[n] put Doe into the restraint chair as soon as he was removed from my patrol vehicle.

The driver of the vehicle, Eugene Satterwhite, was ran for want or warrants with negative results. Due to the incident vehicle being parked and Satterwhite showing that his driver's license was under DUI suspension, the incident vehicle was towed by McCann and Chester. Satterwhite was released from the scene.

Aff. of Probable Cause at 2.

On July 14, 2016, following a non-jury trial, the trial court convicted Thomas of the above charges. Thomas was sentenced to 3 years' probation for the conviction for firearms not to be carried without a license. The trial court imposed no further penalty for Thomas's remaining convictions. Thomas did not a file post-sentence motion. On August 10, 2016, Thomas filed a timely notice of appeal.

_____

[6] There is no dispute that "John Doe" was Thomas.

- 4 -

Thomas raises the following issue on appeal: "Whether Mr. Thomas's conviction for Firearms Not to be Carried Without a License must be reversed, and his judgment of sentence in this regard must be vacated, when the Commonwealth failed to prove, beyond a reasonable doubt, that the gun was carried concealed on or about his person?" Thomas's Br. at 4.

We apply the following standard when reviewing a sufficiency of the evidence claim:

> [W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Best*, 120 A.3d 329, 341 (Pa.Super. 2015) (some alterations in original) (quoting *Commonwealth v. Harden*, 103 A.3d 107, 111 (Pa.Super. 2014)).

In relevant part, section 6106(a)(1) of the Crimes Code provides that:

[A]ny person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S. § 6106(a)(1).

The trial court made the following findings:

THE COURT: Okay. Mr. Thomas, I find that between the affidavit for probable cause and your admission, that you were in fact carrying a gun at some point either concealed and/or in a vehicle.

. . .

[DEFENSE COUNSEL]: He was not licensed. The reason why we were asserting his innocence to [the count of carrying without a license], if you would like to hear some argument, is it was not transported in the vehicle. He was sitting in the vehicle, was incapable -- or at least was not driving or moving.

THE COURT: [The statute] doesn't say -- it just says in a vehicle.

He also said he had it in a holster which I, according to his description, would consider to be a concealed weapon on his person.

[DEFENSE COUNSEL]: Well --

THE COURT: So he's guilty twice on that count.

N.T., 7/14/16, at 8-9.

Viewing all the evidence admitted at trial in the light most favorable to the Commonwealth as verdict-winner, we conclude that there was sufficient evidence to support Thomas's conviction for carrying a firearm in a vehicle without a license pursuant to section 6106(a)(1). **See Commonwealth v. Festa**, 40 A.2d 112, 116 (Pa.Super. 1944) (holding that to support

- 6 -

J-A24011-17

conviction under 18 P.S. § 4628, a predecessor statute to section 6106, the "Commonwealth need not prove more than the presence of the firearm in the car while accused was inside").[7]

Judgment of sentence affirmed.[8]


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  11/14/2017

---

[7] At trial, Thomas's counsel stated his belief that a violation of the first part of section 6106(a)(1) – *i.e.*, carrying a firearm in a vehicle without a license – requires the vehicle to be moving.  N.T., 7/14/16, at 9-10.    In his statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Thomas also challenged his conviction on this basis.   However, because Thomas neither included this issue in his statement of questions involved nor developed it in the argument section of his brief, **see infra** note 3, we conclude that he has waived this claim.  **See In re M.Z.T.M.W.**, 163 A.3d 462, 465-66 (Pa.Super. 2017).

[8] In their briefs on appeal, both parties focus on whether the gun was adequately "concealed on or about [Thomas's] person" within the meaning of section 6106(a)(1).  Because Thomas's conviction is supportable on other grounds, we need not address this issue.  **Cf. Commonwealth v. Butler**, 150 A.2d 172, 173 (Pa.Super. 1959) (concluding that evidence was sufficient to support conviction of carrying concealed firearm without a license under predecessor to section 6106(a)(1) where gun was partly visible from jacket pocket of defendant).